UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID G. HIGELMIRE,

        Plaintiff,

v.                                          Case No. 1:04-CV-702
                                                      Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on November 8, 1949 and obtained a GED (AR 21, 59).[1] He stated that he became disabled on November 1, 1997 (AR 21), having had previous employment as an auto assembly line worker (AR 34). Plaintiff identified his disabling conditions as hearing loss, frequent headaches, problems with his right arm and elbow, primary vein deficiency (PVD), cervical spine problem, carpal tunnel syndrome, ulcerated leg and nerve problems (AR 33). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on June 25, 2004 (AR 11-18). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

**II. ALJ'S DECISION**

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that he had not engaged in substantial gainful activity since the alleged onset of disability (November 1, 1997) (AR 17). Because plaintiff was insured for benefits only through March 31, 1999, the time period at issue is November 1, 1997 through March 31, 1999 (AR 17). Second, the ALJ found that plaintiff suffered from severe impairments of chronic back pain, obesity and carpal tunnel syndrome (AR 17). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 17). The ALJ decided at the fourth step that plaintiff had the residual functional capacity to perform:

> light work with a sit/stand option (with no more than 15 minutes of uninterrupted standing and no more than 2 hours of standing in an 8 hour work day); no use of vibratory tools; a work environment with minimal noise and no work above shoulder level.

(AR 17). The ALJ further concluded that plaintiff was unable to perform his past relevant work (AR 17).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 17). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in Michigan: machine tender (7,800 jobs); line attendant (4,800 jobs) and floor attendant (3,800 jobs) (AR 17). The ALJ also found plaintiff's allegations regarding his limitations were not totally credible (AR 17). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 17-18).

## III. ANALYSIS

Plaintiff raises the following general issue on appeal:

**Whether substantial evidence of record, taken as a whole, supports the final decision of the Commissioner of Social Security, that plaintiff, David Higelmire, was not disabled, and therefore not entitled to Social Security Disability Insurance Benefits.**

Plaintiff sets forth two separate arguments in his brief. First, he contends that the ALJ failed to grant adequate weight to medical evidence of his ongoing vascular problems (i.e., vascular insufficiency) which results in ulcerations of his legs. In this regard, plaintiff testified that he needs to elevate his leg above his chest level for up to one-third of the day to prevent swelling and ulcerations on his leg (AR 250). Second, plaintiff contends that the ALJ should have included the daily leg elevation limitation in his hypothetical question posed to the vocational expert (VE).

### A.   Vascular insufficiency

Plaintiff has a sparse medical record of his treatment during the operative time period at issue (November 1, 1997 through March 31, 1999). Medical records from General Motors indicate that in April 1995 plaintiff was identified as having vascular insufficiency with edema of the right calf (AR 116). In October 1995, plaintiff was described as having poor circulation in his lower right extremity and a cervical spine problem (AR 116). Plaintiff was restricted to limited standing, no repetitive gripping work below shoulder level and no lifting over 25 pounds (AR 116). Plaintiff's treating physician, Nicholas Bartz, D.O., diagnosed him with bilateral venous incompetence and PVD as early as April 1996 (AR 181). In a physical therapy evaluation on September 9, 1996, plaintiff reported a history of blood clots and complained of an unhealed sore

5

that had opened up about one month prior to his visit (AR 163). Plaintiff's sore was treated and started "to look good" by September 27, 1996 (AR 161).

Emmanuel Obianwu, M.D., examined plaintiff on June 16, 1997, and noted that he had varicose veins and healed ulcers on the right lower extremity (AR 112). At that time, plaintiff reported that he had a work injury at General Motors in 1982 or 1983 and that he was assigned to restricted work due to neck and back pain (AR 109-12). Plaintiff reported that, other than working two months in the fall of 1995, he had not worked in the past five to seven years prior to the examination (AR 111). Dr. Obianwu suggested that plaintiff perform work that did not involve excessive bending of the trunk or lifting above 25 pounds (AR 114). In December 1997, Dr. Bartz noted that plaintiff had an ulcer on his right leg (AR 200). On February 12, 1998, Dr. Bartz diagnosed plaintiff with PVD and myalgias, but placed no restrictions on his work (AR 147).

The ALJ observed that there were "questionable medical findings regarding the claimant's alleged impairments" and that plaintiff did not receive the type of treatment consistent with a totally disabled individual (AR 14, 16). There is no objective medical evidence to support plaintiff's testimony that he had lost 75 to 80 percent of the circulation in his leg (AR 257). While plaintiff testified that since 1994 he was supposed to elevate his leg above his chest to prevent swelling (AR 242), neither Dr. Bartz nor Dr. Obianwu considered plaintiff's circulation problem as a limitation on his ability to work or directed plaintiff to elevate his leg in this manner. Plaintiff's testimony that he tried liquid skin, therapy, whirlpool and "all kinds of medicines" to treat the ulcers (AR 241) is not supported by treatment records. Indeed, the administrative transcript does not contain any medical records covering a significant portion of the time period at issue (February 13, 1998 through March 31, 1999).

The ALJ also found that plaintiff's daily activities prior to his last insured date of March 31, 1999 were not limited to the extent that one would expect of a totally disabled person (AR 16). At the administrative hearing on April 12, 2004, plaintiff testified that he owns about 75 or 80 acres of wilderness land, that he can probably walk three miles, that he can lift 25 pounds, that he takes weekend trips "up north," that he has traveled to Florida, Georgia and Texas, that he goes fishing with his son, and that he does a little deer hunting at a modified deer blind on his property (AR 231, 236-37, 239-40, 243-45). Plaintiff also testified that he bought a new boat when he "retired" in 1997 or 1998, and that he took two three-hour fishing trips in 2003 (AR 240, 244).

The ALJ adopted the opinions of plaintiff's attending physicians that restricted plaintiff to light work activity and limited standing (i.e., a sit/stand option) (AR 16, 116). In adopting these opinions, the ALJ rejected plaintiff's "vague and general" description of his symptoms as they existed on or before March 31, 1999 as unpersuasive and inconsistent with the record (AR 16). An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict). Contradictions exist among the medical records, plaintiff's testimony regarding the extent of his

limitations and other evidence in the record. Accordingly, the ALJ could properly discount plaintiff's allegations that he suffered from a disabling vascular condition.

### B. ALJ's hypothetical question to the VE

Finally, plaintiff contends that the ALJ's finding that he could perform a range of light work through March 31, 1999 is unsupported by substantial evidence, because the ALJ relied on a flawed hypothetical question posed to the VE. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, plaintiff's counsel elicited testimony from the VE that plaintiff's alleged need to elevate his leg above heart level for one-third of the day would preclude even sedentary work (AR 254-55). Plaintiff contends that the ALJ's hypothetical question posed to the VE was flawed because it failed to include this restriction. Plaintiff's testimony regarding his frequent need to elevate his leg , however, was not supported by the medical evidence. As previously discussed, neither Dr. Bartz nor Dr. Obianwu directed plaintiff to elevate his leg in this manner. The ALJ could properly decline to include this unsubstantiated restriction in the hypothetical question posed to the VE. The

8

ALJ's hypothetical question posed to the VE included the restrictions as set forth in the ALJ's residual functional capacity finding (AR 17, 252-53). Accordingly, the ALJ's hypothetical question was not flawed for failing to include plaintiff's allegation that he needed to elevate his leg above heart level for one-third of the day.

### IV. Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.


Dated: November 4, 2005  /s/ Hugh W. Brenneman, Jr.
Hugh W. Brenneman, Jr.
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).